IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Jeffery Knight, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:21-cv-50329 |
| Wexford Health Sources, Inc., | ) | |
| Merrill J. Zahtz, | ) | Magistrate Judge Lisa A. Jensen |
| Nurse Practitioner Sword, | ) | |
| Nurse Practitioner Mershon, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| Jeffery Knight, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | Case No. 3:21-cv-50330 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Wexford Health Sources, Inc., | ) | |
| Merrill J. Zahtz, | ) | |
| | ) | |
| *Defendants*. | ) | |

**REPORT AND RECOMMENDATION**

For the reasons stated below, it is this Court's report and recommendation that Defendants' motions to dismiss the complaints for failure to exhaust administrative remedies [44] in Case No. 3:21-cv-50329 and [40] in Case No. 3:21-cv-50330 be denied. Any objection to this report and recommendation must be filed by November 8, 2022. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

**I. Background[1]**

---

[1] Unless otherwise specified, docket entries refer to Case No. 3:21-cv-50329.

1

On August 23, 2021, Plaintiff Jeffery Knight, a prisoner at Dixon Correctional Facility (Dixon), filed the instant lawsuits pursuant to 42 U.S.C. § 1983, raising claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

In his second amended complaint in Case No. 3:21-cv-50329 (the gastrointestinal case), Plaintiff claims that Defendants Merrill J. Zahtz (Dr. Zahtz), Nurse Practitioner Sword (NP Sword), and Nurse Practitioner Mershon (NP Mershon) were deliberately indifferent to Plaintiff's nausea, vomiting, excruciating abdominal pain, and severe weight loss caused by his gastroesophageal reflux disease and the erosion of his stomach and duodenum. Dkt. 17. Plaintiff further claims that Defendant Wexford Health Sources, Inc. (Wexford) has a policy, practice, and custom of denying or delaying certain types of offsite treatment, such as the treatment for abdominal and stomach issues, by scheduling treatment at the University of Illinois at Chicago despite persistent delays in offering and scheduling appointments.

In his amended complaint in Case No. 3:21-cv-50330 (the prostate case), Plaintiff claims that Dr. Zahtz was deliberately indifferent to Plaintiff's complaints of frequent and painful urination caused by his urinary and prostate problems. Case No. 3:21-cv-50330, Dkt. 21. Plaintiff also raises the same policy, practice, and custom claim against Wexford as in the gastrointestinal case, citing treatment for urinary and prostate problems as an example.

Defendants[2] have moved to dismiss both cases, asserting the affirmative defense that Plaintiff failed to exhaust his administrative remedies before filing suit as required by 42 U.S.C. § 1997e(a).[3] Dkt. 44; Case No. 3:21-cv-50330, Dkt. 40. The parties fully briefed the motions, attaching several exhibits to their briefs.

---

[2] Unless otherwise specified, "Defendants" refers to all four defendants: Wexford, Dr. Zahtz, NP Sword, and NP Mershon.
[3] Defendants have not raised the issue of exhaustion in a third lawsuit relating to Plaintiff's inguinal hernias, which is stayed pending the resolution of the instant motions. Case No. 21-cv-50183, Dkt. 63.

On September 7, 2022, the Court held a consolidated evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) regarding Plaintiff's exhaustion of his administrative remedies in both cases. *See Waggoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (finding that exhaustion is a preliminary issue that should be resolved before deciding the action on the merits). At the hearing, the parties stipulated to the admission of all exhibits and called four witnesses: Plaintiff, Dixon counselor Angela Carlson, Administrative Review Board (ARB) Chairperson Clayton Stephenson, and Dixon Trust Fund Officer Tamara Brinkmeier. *See* Dkt. 53.

## II. Legal Standard

The Prison Litigation Reform Act (PLRA) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "The exhaustion requirement's primary purpose is to 'alert[] the state' to the problem 'and invit[e] corrective action.'" *Turley v. Rednour*, 729 F. 3d 645, 649 (7th Cir. 2013) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

To exhaust administrative remedies, a prisoner must "us[e] all steps that the agency holds out" and must "do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Because Plaintiff is housed in an Illinois Department of Corrections (IDOC)

facility, he must abide by the grievance procedures established by Illinois law, codified in 20 Ill. Admin. Code §§ 504.800, *et seq*. Under those provisions, a prisoner must submit a grievance to his institutional counselor "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." *Id.* § 504.810(a). "Grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation . . . includ[ing] grievances that . . . [a]re not filed timely and for which good cause justification for the delay is not provided . . . ." *Id.* § 504.830(a).

The written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). If the prisoner does not know the name of an individual who was involved, he may still file a grievance, but he "must include as much descriptive information about the individual as possible." *Id*. If the institutional counselor does not informally resolve the grievance, the Grievance Officer reviews the grievance, provides a written response to the prisoner, and sends written findings and recommendations to the Chief Administrative Officer (CAO). *Id.* § 504.830(a), (e). The CAO then reviews those findings and recommendations and sends a written decision to the prisoner. *Id.* § 504.830(e). If, after the CAO responds, the prisoner is still dissatisfied, he may appeal in writing to the IDOC Director or the Director's designees on the ARB; the written appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a)–(b). The ARB "shall submit to the Director a written report of its findings and recommendations." *Id.* § 504.850(d). The final step is for the IDOC Director to review the ARB's findings and recommendations and make a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(e).

4

A prisoner may also request that a grievance be handled as an emergency by sending it directly to the CAO. *Id.* § 504.840. If the CAO determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." *Id.* If the CAO determines that the grievance should not be handled on an emergency basis, the prisoner is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* § 504.840(c).

Strict adherence to the exhaustion requirements is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (citations omitted).

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on Defendants to prove by a preponderance of the evidence that an administrative remedy was available to Plaintiff and that Plaintiff failed to exhaust that remedy. *See Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020).

### III. Discussion

Defendants argue that Plaintiff has not exhausted his administrative remedies for his claims in both cases, and specifically cite eight medical grievances Plaintiff filed relating to his claims.[4] Because the Court finds that Grievance 21-1818 exhausts all of Plaintiff's claims against all Defendants in both cases, the Court's discussion will focus solely on that grievance.

---

[4] The eight grievances are numbered 19-6550, 19-6633, 20-2654, 20-2722, 20-3331, 21-1818, 21-3131, and 21-3132. Defs.' Mot. at 2, Dkt. 44. As Plaintiff notes, Defendants cite but do not actually address all eight grievances, suggesting they forfeited their argument that Plaintiff failed to exhaust his administrative remedies through those grievances. Because the Court finds that Defendants have not satisfied their burden as to Grievance 21-1818, the Court does not need to address the question of forfeiture.

**A. Documentary Evidence**

On May 11, 2021, Plaintiff filed Grievance 21-1818 on an emergency basis, sending it directly to CAO Justin Wilks. Defs.' Ex. A at 1, Dkt. 45-1. Plaintiff alleged:

> This grievance is in regards to Dixon C.C. Staff, Wexford Health Sources Inc, and any and all other unknown Medical and Non-Medical Staff involved in ensuring that I receive timely medical treatment for my on-going Prostate, Stomach and Colon problems.
>
> Over 14 months ago I was suppose to have prostate surgery, due to my having an enlarged prostate and experiencing the following problems: painful urination which is further exasperated by the fact that I have a left and right inguinal hernia. difficulty urinating, starting and stopping. not emptying, urinating 30 plus times per day, 4–6 times per night, severe right kidney pain, and as a result only getting a few hours sleep etc. I have been on every medication available to me over the past approx. 15 years, but nothing works, as a result the Urologist was going to cut away part of my prostate to help alleviate my problems. However, after having over 14 months to think about this, I am now requesting a 2nd opinion to see if there is a less radical (i.e. high pressure hot water procedure etc.) procedure. rather than cutting my prostate open.
>
> ****I'm also very concerned about prostate cancer, due to medical staffs failure to test me for it.
>
> On 12-1-2020, I was approved for an endoscopy, due to my having continuous severe to sometimes severe excruciating pain, that sometimes doubles me over, keeps me from standing up, wakes me up at night, severe cramps, affects me eating habits, got me very concerned due to the fact that IDOC/Wexford prescribed me Zantac for many years, sometimes twice a day, Zantac was later pulled from the market due to it causing cancer etc. I have been on every medication available to me and nothing works to alleviate the pain.
>
> On 12-16-2015, I had my second colonoscopy, due to my family having a history of colon cancer. I have lost three family members to colon cancer. On 12-16-2015, the Doctor at Carle Clinic ordered that a colonoscopy done in 5 years. On 12-16-2020, marked the 5 years since my last colonoscopy. How ever as of today 5-11-2021, I have yet to receive one, even though I notofied medical staff over 5 months ago about this.
>
> However, due to the above named/unnamed individuals/entities failure to ensure that I receive timely medical treatment for the

>above three serious on-going medical problems, I am left to suffer continuous severe excruciating pain for no apparent reason.
>
>It should be noted that almost every time that I am seen in health care, I inquire as to the status of my received thing above said medical treatment, but am always told, "they haven't forgotten about me, and they are in the process of scheduling me an appointment." I was later told by mediacl staff/IDOC staff that they Wexford/IDOC have a contract with the University of Illinois, Chicago (U.I.C) to treat inmates and that if they take me someplace other than U.I.C., that Wexford has to pay for it, which they don't like to/won't do unless its an emergency, and that they are over a year behind in scheduling appointments.
>
>With that being said, it is apparent to me that I am suffering severe excruciating pain daily, just because Wexford (i.e. Dr. Zahtz etc.) are trying to save money and in return earn bigger bonus checks, otherwise I would have been taken to KSB or Sterling as with my skin cancer.

*Id.* at 1–2 (so in original). In the "Relief Requested" portion of the grievance Plaintiff stated: "To be immediately taken to KSB or Sterling or some other local hospital, to receive a endoscopy, colonoscopy and second opinion on my prostate surgery, instead of having to wait many months to get an appointment at U.I.C." *Id.* at 1. CAO Wilks expedited the emergency grievance request on May 14, 2021. *Id.*

Grievance Officer B. Wells reviewed Grievance 21-1818 on May 18, 2021. Defs.' Ex. B, Dkt. 45-2. Wells noted Plaintiff's "allegation that his medical issue is being ignored and is requesting treatment." *Id.* Wells further noted that Director of Nursing M. Carpenter stated on May 17, 2021, that Plaintiff "ha[d] been placed on Dr. Zahtz's line to review for scheduling a local appointment and re-evaluating urgency of referral." *Id.* Wells was "reasonably satisfied offender Knight ha[d] access to health care services and his medical issue [wa]s scheduled to be reviewed." *Id.* Wells recommended denying the grievance, and CAO Wilks concurred. *Id.*

Finding this response inadequate, Plaintiff noted on May 20, 2021, that he intended to appeal the denial of his grievance to the ARB. *Id.* The ARB received Plaintiff's appeal on May 27,

2021. Defs.' Ex. C, Dkt. 45-3. The ARB returned the grievance to Plaintiff on May 28, 2021, claiming it was untimely because Plaintiff "gives dates of over 14 months ago, past 15 years. 12-1-20, 12-16-15, and 5 months ago, all of which are past 60 day time frame required in DR504 guidelines." *Id.*

**B. Evidence at the Hearing**

At the hearing, Plaintiff testified that he included particular dates in Grievance 21-1818 to give Dixon a history of what was happening to him. Plaintiff testified that he had started complaining many years earlier and had steadily been complaining since he initially tried to get treated for his conditions. Plaintiff acknowledged that NP Mershon and NP Sword were not mentioned by name in Grievance 21-1818 and that Dr. Zahtz was only mentioned by name at the end of the grievance. When asked why, Plaintiff testified that he did not know who exactly was responsible for scheduling his offsite appointments. Plaintiff further testified that he submitted Grievance 21-1818 as an emergency to get immediate help. On these points, the Court credits Plaintiff's unrebutted testimony.

Current ARB Chairperson Clayton Stephenson testified about the ARB's process for handling appeals. Mr. Stephenson acknowledged that he was not aware of the continuing violation doctrine. Mr. Stephenson testified that he would consider a continuing injury but would still need a date within the 60-day timeframe for that grievance. Mr. Stephenson testified that he did not review Grievance 21-1818 when it was initially submitted to the ARB, but he reviewed it as part of his preparation for the hearing. The Court finds Mr. Stephenson's testimony credible as it relates to the ARB's appeal process but recognizes that Mr. Stephenson had no personal knowledge regarding the return of Grievance 21-1818 beyond what appears in the documentary evidence.

8

**C. Analysis**

Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding the claims against them in both cases because Grievance 21-1818: (1) was untimely; and (2) did not sufficiently identify Defendants.[5] In response to the first point, Plaintiff argues that his failure to receive adequate medical care was a continuing violation, thereby making Grievance 21-1818 timely filed. Plaintiff also argues that Defendants forfeited their challenge to any procedural deficiency by addressing Grievance 21-1818 on the merits. On the second point, Plaintiff argues that he was not required to specifically name Defendants and Grievance 21-1818 fulfilled its purpose of providing prison officials with an opportunity to address his complaints.

**1. Timeliness**

Defendants adopt the ARB's conclusion that Grievance 21-1818 was untimely because it referred only to dates that predated the 60-day limitations period and "the failure to file a timely grievance constitutes a failure to exhaust." Defs.' Mot. at 11, Dkt. 44 (citing *Pozo*, 286 F.3d at 1025).

**a. Forfeiture of Timeliness Challenge**

Plaintiff responds that Defendants have forfeited their challenge to the timeliness of Grievance 21-1818 because Dixon's Grievance Officer addressed the merits of the grievance even though the ARB later found the grievance was untimely. Pl.'s Resp. at 9–10, Dkt. 51 (citing *Maddox*, 655 F.3d at 721–22). In *Maddox*, the court held that procedural shortcomings amount to a failure to exhaust only if prison administrators explicitly relied on that shortcoming. *Maddox*, 655 F.3d at 721–22. When prison officials address a prisoner's grievance on its merits without

---

[5] The Court notes that Defendants do not argue that Grievance 21-1818 is insufficient to address the subject matter of Plaintiff's claims in each case relating to the lack of treatment for his gastrointestinal and prostate issues.

rejecting it on procedural grounds, the "grievance has served its function of alerting the state and inviting corrective action." *Id.* (citing *Riccardo*, 375 F. 3d at 524). Here, as set forth above, not only did the CAO expedite review of Plaintiff's grievance after determining it was of an emergency nature, but prison officials denied Plaintiff's grievance on its merits after investigating the issues referred to therein and determining that Plaintiff had access to health care services and no further action was necessary. Thus, Grievance 21-1818 served its purpose of alerting Dixon to Plaintiff's complaints and providing prison officials with an opportunity to correct the issue.

The fact that the ARB later ruled that Grievance 21-1818 was untimely does not alter this analysis. Rather, "a prisoner's remedies are exhausted when a Grievance Officer addresses a grievance on its merits, but the ARB later examines the grievance on procedural grounds and cures the Grievance Officer's error." *Shakur v. Swalls*, No. 3:20-CV-00042, 2021 WL 3603490, at *3 (S.D. Ill. Aug. 13, 2021) (collecting cases). In *Shakur*, the grievance officer and CAO reviewed the prisoner's allegations of deliberate indifference to his serious kidney problems and found none, making no mention of procedural deficiencies. *Id.* at *2. The court found that this "indicate[d] that the institution had the information necessary to investigate the plaintiff's claims adequately," notwithstanding the ARB's later finding that the grievance was untimely. *Id.* at *3.

Similarly, in *Kane v. Santos*, the court noted that the ARB's decision to reject the plaintiff's grievance as untimely "ignore[d] the fact that the discretion to decide an untimely filed grievance on the merits lies with the grievance officer." *Kane v. Santos*, No. 17-CV-01054, 2020 WL 967878, at *4 (S.D. Ill. Feb. 28, 2020). Because Dixon's Grievance Officer addressed Grievance 21-1818 on its merits, the Court finds that "the grievance has served its function of alerting the state and inviting corrective action, and [D]efendants cannot rely on the failure to exhaust defense." *Maddox*, 655 F.3d at 722.

### b. Continuing Violation Doctrine

Moreover, Plaintiff also responds that because his failure to receive adequate medical care was a continuing violation, Defendants' challenge to the timeliness of Grievance 21-1818 fails. This Court agrees.

The Seventh Circuit has recognized that a continuing violation exists where there is a "practice that brings with it a fresh violation each day." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). When an objectionable condition is continuing, "prisoners need not file multiple, successive grievances raising the same issue" to exhaust their administrative remedies. *Turley*, 729 F.3d at 650. Accordingly, "deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Selvie v. Siddiqui*, No. 3:20-CV-00328, 2021 WL 347836, at *5 (S.D. Ill. Feb. 2, 2021) (citing *Jervis v. Mitcheff*, 258 Fed. App'x. 3, 5-6 (7th Cir. 2007) (unpublished)). "Grievances predicated on continuing violations are not untimely because such violations are ongoing." *Selvie*, 2021 WL 347836, at *5 (collecting cases). For example, in *Ramirez v. Fahim*, No. 12-CV-1197, 2013 WL 12181943, at *3 (S.D. Ill. Dec. 20, 2013), the court found that the plaintiff's "grievances were improperly determined to be untimely because Plaintiff could have begun the grievance process at any time that the denial of medical care was ongoing."

Here, Plaintiff was grieving Defendants' continued failure to schedule his endoscopy and prostate surgery. Plaintiff claims that he spent over a year waiting for these approved procedures despite Defendants' representations that he was in line to be scheduled. As such, Plaintiff was grieving Defendants' continuous failure to follow through with the procedures and not any discrete act by Defendants in originally ordering those procedure for Plaintiff. Defendants' alleged failure occurred every day that Plaintiff suffered from the conditions that his endoscopy and prostate

11

surgery would ameliorate. *See Selvie*, 2021 WL 347836, at *6 (finding the plaintiff's "pain was a continuing violation which 'restarted' each day it was not treated"). A prisoner alleging a continuing violation satisfies the exhaustion requirement when the prison has received notice of the problem and an opportunity to correct it. *See Turley*, 729 F.3d at 650; *Selvie*, 2021 WL 347836, at *5. Grievance 21-1818 satisfied that requirement here where it provided Dixon with notice of Plaintiff's complaints of the ongoing denial of medical care and gave prison officials an opportunity to correct them. *See Selvie*, 2021 WL 347836, at *5; *Turley*, 729 F.3d at 650. Therefore, even assuming Defendants have not forfeited their challenge to the timeliness of Grievance 21-1818, the Court agrees with Plaintiff that because the continuing violation doctrine applies in these circumstances, Defendants' challenge to the timeliness of Grievance 21-1818 still fails.

**2. Identification of Defendants**

Defendants argue that Grievance 21-1818 was not properly exhausted because "Plaintiff did not identify a specific provider who engaged in any improper conduct." Defs.' Mot at 4, Dkt. 44. As noted above, however, the IDOC regulations do not categorically require a prisoner to name prospective defendants in his grievance. 20 Ill. Admin. Code § 504.810(c). Courts have elaborated that "the purpose of [§ 504.810(c)] is to put prison officials on notice of an issue at the prison; failure to include named defendants in a grievance is 'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Donald v. Varga*, No. 17 C 50368, 2019 WL 2525856, at *5 (N.D. Ill. June 19, 2019) (citing *Kyles v. Beaugard*, No. 15 C 8895, 2017 WL 4122708, at *8 (N.D. Ill. Sept. 18, 2017) (quoting *Maddox*, 655 F.3d at 722). Put another way, Plaintiff need not have named any particular defendant in his grievance so long as his grievance sufficiently "raise[d] the issue which is the

subject of the lawsuit." *Id.* at *6 (citing *Maddox*, 655 F.3d at 722). In the context of deliberate indifference to a serious medical need, "[a]n inmate is not required to 'name every individual involved in each stage of the alleged, ongoing denial of needed medical care.'" *Wojtaszek v. Litherland*, No. 08-CV-317, 2010 WL 7633990, at *1 (S.D. Ill. Sept. 1, 2010) (quoting *Thomas v. Ghosh*, No. 08 C 4644, 2009 WL 910183, at *4 (N.D. Ill. Mar. 31, 2009)), *report and recommendation adopted*, 2011 WL 4499692 (S.D. Ill. Sept. 27, 2011).

Here, Grievance 21-1818 explicitly mentions "Wexford Health Sources Inc." and "Wexford (i.e. Dr. Zahtz etc.)," as well as "any and all other unknown Medical and Non-Medical Staff involved in ensuring that [Plaintiff] receive timely medical treatment for [his] on-going Prostate, Stomach and Colon problems." Defs.' Ex. A, Dkt. 45-1, at 1. Dixon officials certainly knew that Dr. Zahtz was involved in Plaintiff's medical care; indeed, when responding to Grievance 21-1818, Dixon's Grievance Officer was reasonably satisfied with Plaintiff's access to health care because Plaintiff was "on Dr. Zahtz's line to review" his medical needs. Defs.' Ex. B, Dkt. 45-2; *see Selvie*, 2021 WL 347836, at *6 n.2 ("It is clear that prison officials understood against whom Plaintiff filed this grievance because Plaintiff's grievance counselor prepared a memorandum with information obtained from Plaintiff's medical care professionals."). Because Grievance 21-1818 adequately notified Dixon officials of the purported indifference of Wexford and Dr. Zahtz with respect to Plaintiff's gastrointestinal and prostate conditions, thus giving Dixon officials the opportunity to correct the problem, the Court finds that this grievance exhausts all of Plaintiff's claims against Wexford and Dr. Zahtz in both cases.

In the gastrointestinal case, Defendants point to Plaintiff's failure to name NP Sword and NP Mershon in Grievance 21-1818, arguing that Plaintiff's reference to "any and all other unknown Medical and Non-Medical Staff" failed to provide Dixon with enough information to

13

identify NP Sword and NP Mershon.[6] Defs.' Mot. at 11, Dkt. 44. However, Plaintiff limited this broad description to those "involved in ensuring that [he] receive timely medical treatment for [his] on-going Prostate, Stomach and Colon problems." Defs.' Ex. A, Dkt. 45-1, at 1. Plaintiff testified that he did not identify any particular medical professional because he did not know who exactly was responsible for scheduling the appointments. The Court finds this statement credible. As the Seventh Circuit has explained, "it would be unreasonable to expect that . . . an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision." *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) (unpublished). Grievance 21-1818 provided Dixon officials with an opportunity to address Plaintiff's concerns about the deliberate indifference of the medical staff to his gastrointestinal issues, and "that is all that is required." *Wojtaszek*, 2010 WL 7633990, at *6 (citing *Jones*, 549 U.S. 199) (finding prisoner's "detailed grievance was more than sufficient to alert prison officials to the difficulties he was having obtaining dental treatment"). Accordingly, Plaintiff has exhausted his administrative remedies for his claims against NP Sword and NP Mershon in the gastrointestinal case, Case No. 3:21-cv-50329.

### IV. Conclusion

For the reasons stated above, it is this Court's report and recommendation that Defendants' motions to dismiss the complaints for failure to exhaust administrative remedies [44] in Case No. 3:21-cv-50329 and [40] in Case No. 3:21-cv-50330 be denied.

Date: October 25, 2022         By: *Lisa A. [signature]*
                                   Lisa A. Jensen
                                   United States Magistrate Judge

---

[6] Defendants do not dispute the fact that "[a]t all times relevant," Defendants Wexford, Dr. Zahtz, NP Sword, and NP Mershon "provided medical care and treatment to inmates at the Dixon Correctional Center." Defs.' Mot. at 2, Dkt. 44.